IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2004

## DON WESLEY MCMILLEN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Coffee County
No. 29, 712   John W. Rollins, Judge**

---

**No. M2003-00879-CCA-R3-PC - Filed May 10, 2004**

---

The petitioner, Don Wesley McMillen, entered a plea of guilty to two (2) counts of attempted rape of a child in May of 1998.  In exchange for the guilty pleas, the petitioner received concurrent, seventeen-year sentences at 35% as a Range II Offender.  The petitioner timely filed a petition for post-conviction relief arguing that he received ineffective assistance of counsel and that his guilty plea was not knowing or voluntary because the trial court violated the provisions of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977).  The trial court denied the petition following an evidentiary hearing and this appeal followed.  We affirm the dismissal of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, and THOMAS T. WOODALL, JJ., joined.

Roger J. Bean, Tullahoma, Tennessee, for the appellant, Don Wesley McMillen.

Paul G. Summers, Attorney General & Reporter; Elizabeth T. Ryan, Assistant Attorney General; Mickey Layne, District Attorney General; and Doug Aaron, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On May 22, 1998, the petitioner pled guilty to two counts of attempted rape of a child. Pursuant to settlement with the State, several of the charges were dismissed or reduced in exchange for the guilty pleas.  As a result, the petitioner received concurrent, seventeen-year sentences at 35% as a Range II Offender.  During the plea hearing, the prosecutor stated that if the case had gone to trial, the State would have proven that the victim, a child under the age of thirteen, would have

testified that from August to November of 1997, the petitioner was living with her family and "penetrated her vaginal cavity on two different occasions."

The petitioner then filed a petition for post-conviction relief alleging that trial counsel was ineffective for not thoroughly investigating the matter, failing to interview several people, and failing to file a discovery motion; and that his guilty plea was not knowing or voluntary.

### Post-Conviction Hearing

An evidentiary hearing was held on the post-conviction petition on February 6, 2003. The trial court dismissed the petition after hearing testimony from various individuals, including trial counsel, the petitioner, an investigator from the Public Defender's office, the police officers involved in the investigation, the doctor that treated the victim, the nurse that treated the victim, and several others.

The evidence at the hearing consisted of the following. The petitioner testified that, at the time of the hearing, he was forty-five years old and had only a seventh grade education. The petitioner later received his GED. He admitted to a prior conviction on a similar charge of rape of a child in Florida, but claimed that he was beaten and forced into making a false statement admitting his guilt.

After the petitioner was arrested, the Public Defender was appointed to represent him. He claims that he only spoke with trial counsel four times prior to the entry of his guilty plea, for a total of about four hours and that he spoke with Dale Conn, the investigator in the Public Defender's office, on five or six different occasions. The petitioner testified that he gave Mr. Conn both oral and written requests of matters that he wished trial counsel to pursue in his defense.

The petitioner testified at length as to how he felt trial counsel's representation was ineffective. He complained about trial counsel's failure to file a discovery motion, even though the petitioner was aware of the "open file" policy that existed between the Public Defender's office and the District Attorney's office. Further, the petitioner claimed that he felt compelled to file a pro se discovery petition, but that Mr. Conn had it "squashed." The petitioner claimed that counsel failed to interview numerous witnesses, including: George Teal, the neighbor of the victim who allegedly would have testified that the victim was trying to blackmail the petitioner; Dot Qualls, the treating nurse at Coffee County Medical Center; Mike "Ace" Killian, a person who allegedly would have testified that the victim was not afraid of the petitioner as she claimed; Dr. Rao Chunduru, the treating physician at Coffee County Medical Center who could have testified regarding the result of tests performed on the victim to determine whether she had a sexually transmitted disease; Kenny Gipson; and the victim's family. The petitioner complained about trial counsel's failure to interview the victim for the purpose of challenging her inconsistent statements. The petitioner claimed that he and trial counsel never discussed the merits of the case, the likelihood of conviction, possible defenses, or the elements of the crimes he was charged with.

The petitioner testified that essentially, he wanted trial counsel to investigate the inconsistencies in statements made by the victim and wanted tests for sexually transmitted diseases performed on both himself and the victim. He claimed that trial counsel's failure to honor his requests led to a failure by trial counsel to build a defense and the entry of an unknowing and involuntary guilty plea.

Trial counsel testified that his case activity sheet shows that either he or Mr. Conn met with the petitioner at least ten times prior to the entry of the guilty plea and that some conversations, which occurred while trial counsel was at the jail visiting other clients, were not reflected on the sheet. The case activity sheet indicates that he spoke extensively with the petitioner about his case.

Trial counsel explained that he did not file a discovery motion in the petitioner's case because the district attorney general has an "open file" policy. He stated that he reviewed the entire file on more than one occasion. Trial counsel rebutted the petitioner's claims that he did not interview any witnesses. He testified that he interviewed the victim at the general sessions stage of the case and discussed the inconsistencies in the various statements that she had made. He also remembered that either he or Mr. Conn interviewed Dot Qualls, the treating nurse.[1]

Trial counsel admitted that he did not interview the treating physician, Dr. Rao Chunduru. He felt that such an interview was unnecessary because the victim's medical records and doctor's notes were part of the case file, and nothing contained in those records required an interview for follow-up. In fact, trial counsel specifically recalled that nothing in the medical records indicated the presence of a sexually transmitted disease as the petitioner claimed. Trial counsel did not interview the victim's father or siblings because he learned through his investigation that much of what these individuals would have testified to would have been hearsay.

Trial counsel testified that he interviewed Officer Wilma Thomas of the Manchester Police Department in conjunction with the preparation of the petitioner's defense. Officer Thomas, in turn, testified that she recalled speaking with trial counsel on one occasion, but that she could not remember the extent of the discussion.

The petitioner's criminal record was provided to trial counsel by the FBI. It indicated that the petitioner had a prior conviction in Florida for a similar offense and that the petitioner operated under several aliases. The petitioner also had a "fondling charge." Trial counsel testified that he discussed with the petitioner the implications of his criminal record should it be admitted at trial and the standard for admissibility that the trial court would utilize regarding the Florida conviction. Trial counsel also remembered telling the petitioner that he thought the chances for conviction were great and that the sentence for rape of a child as a Range I Offender was fifteen to twenty-five years. Specifically, as to the plea bargain, trial counsel read from his own notes that on May 25, just prior to the entry of the plea, he:

---

[1]Dot Qualls did not remember speaking with anyone regarding the case except for the night that the victim was brought to the hospital.

met with the defendant at jail. Went over the plea bargain. Discussed the facts of the case, possible defenses, range of punishment, waiver of rights, enhancement. I explained to the defendant that I felt he would be found guilty, and he would serve 85 percent of the sentence, that under the plea bargain the State offered he would not. He still wants to take deal. Explained what would happen at court, all of which he understood.

Further, trial counsel's notes indicate that the petitioner was provided with copies of all of the applicable statutes, a copy of the sentencing range chart, a copy of the rights which would be waived upon the entry of the guilty plea, and a copy of the case file. The petitioner signed for his receipt of that information.

Dale Conn, an investigator for the Public Defender's office, also testified at the post-conviction hearing. During the investigation, Mr. Conn admits that he requested the victim's test results from the hospital, but that the plea was entered before the test results were obtained. Further, he admits that he did not interview any of the victim's family members or neighbors. He did not recall if the petitioner specifically requested these interviews. Mr. Conn stated that he sat down with the petitioner to review his file and told petitioner that "things were not the best." Mr. Conn recalled that the petitioner's main objective was to get his sentence out of the 100% release eligibility bracket.

At the conclusion of the hearing, the trial court denied the petition. On appeal, the post-conviction petition seeks review of the following issues: (1) whether the petitioner received ineffective assistance of counsel; and (2) whether the guilty plea was made knowingly, understandingly, and voluntarily.

Post-Conviction Standard of Review

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. See State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

<u>Ineffective Assistance of Counsel</u>

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. <u>See</u> <u>Powers v. State</u>, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." <u>Henley v. State</u>, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. <u>See</u> <u>id.</u> at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is <u>de</u> <u>novo</u>" with no presumption of correctness. <u>Burns</u>, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. <u>See</u> <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. <u>See</u> <u>id.</u> However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. <u>See</u> <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the case herein, the petitioner argues on appeal that he was denied effective assistance of counsel because counsel failed to prepare any defense, failed to interview the victim and other witnesses, relied only on an FBI criminal history report as evidence of the petitioner's prior record, and failed to file a discovery motion. Specifically, the petitioner contends that trial counsel's failure to do these things forced him to plead guilty because he did not think he would receive a fair trial otherwise. The State counters that the record refutes the petitioner's claim that counsel's performance was deficient.

After listening to the testimony at the post-conviction hearing, the trial court determined that the petitioner failed to demonstrate by clear and convincing evidence that counsel performed deficiently as there was "no evidence in the record that the public defender's representation . . . [fell] below" the applicable standard.

In order for the petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. at 687, the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The record does not preponderate against the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions was that the court accredited the testimony of trial counsel rather than that of the petitioner. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odum, 928 S.W.2d 18, 23 (Tenn. 1996).

The trial court accepted as true the testimony of trial counsel concerning the circumstances of the plea and the conversations leading up to that decision, including the fact that there were numerous meetings between the petitioner and either trial counsel or Mr. Conn in which the merits of the case and any plausible defenses were discussed. Further, the case activity sheet, as testified to by trial counsel, indicated that the petitioner met with trial counsel and discussed the plea at length just several days prior to its entry. At that time, there was no indication that the petitioner wanted a trial. The petitioner even signed an acknowledgment indicating that he had received a copy of the applicable statutes, the sentencing range chart, and a statement of what rights he was waiving by pleading guilty. Further, the petitioner's own testimony at the plea hearing indicates that he was advised by his attorney of the elements of the crime, the State's burden of proof, and any defenses that were available. The record also shows that there was an "open file" policy at the district attorney's office, that counsel had complete access to the petitioner's file, and that he reviewed it on several occasions prior to the entry of the guilty plea. Additionally, while trial counsel relied upon an FBI report to learn of the petitioner's criminal record, there is no evidence in the record before this Court that the FBI report was incorrect or that the admission of records from Florida would have somehow affected the petitioner's case. Finally, while trial counsel admits that he did not interview the litany of witnesses the petitioner deemed essential, he interviewed those persons he felt necessary and proper to prepare the petitioner's defense and in preparation for the guilty plea hearing.

As stated previously, this Court affords the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates

against the court's findings. After a <u>de novo</u> review, we conclude that the evidence in the record does not preponderate against the trial court's decision that trial counsel was effective.

Voluntary and Knowing Guilty Plea

The second issue raised by the petitioner in this post-conviction appeal questions the knowing and voluntary nature of his guilty plea. The petitioner maintains that the trial court violated the mandates established in <u>State v. Mackey</u>, 553 S.W.2d 337 (Tenn. 1977), and later adopted in Rule 11(c) of the Tennessee Rules of Criminal Procedure, by failing to: (1) inquire whether the petitioner understood the mandatory minimum and maximum penalties; (2) advise the petitioner of his right to plead not guilty and persist in that plea; and (3) advise the petitioner that if he plead guilty, the court could ask him certain questions under oath and those answers could be used against him in a prosecution for perjury if those statements were false. As a result, he argues that his guilty plea was not knowing or voluntary. The State argues that "violations of the mandates established in <u>Mackey</u> are not cognizable during post-conviction proceedings."

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>Alford</u>, 400 U.S. at 30. The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. <u>See</u> <u>State v. Turner</u>, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); <u>see also</u> <u>Chamberlain v. State</u>, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. <u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. <u>Id.</u> at 904. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. <u>State v. Pettus</u>, 986 S.W.2d 540, 542 (Tenn. 1999); <u>Blankenship</u>, 858 S .W.2d at 904.

In <u>Boykin v. Alabama</u>, the United States Supreme Court held that an accused's guilty plea must be voluntarily, knowingly, and understandingly entered before a conviction resting upon a guilty plea may comply with due process. 395 U.S. 238 (1969). In <u>Boykin</u>, the Supreme Court stated that a guilty plea constituted a waiver of various rights and that it would not presume a waiver of the following federal constitutional rights from a silent record: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. <u>Id.</u> at 242. Thus, <u>Boykin</u> placed a premium on a showing in the record of a sufficient waiver of these specified rights.

-7-

Exercising "its supervisory power to [e]nsure that the courts of this State afford fairness and justice to defendants in criminal cases," our Supreme Court developed stricter standards than those mandated by the Boykin decision in State v. Mackey, 553 S.W.2d 337, 340-41 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) & Tenn. R. App. P. 3(b). Mackey requires that trial judges accepting pleas of guilty in criminal cases substantially adhere to the following procedure:

> [T]he court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> (1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and
>
> (2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and
>
> (3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
>
> (4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and
>
> (5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

Id. at 341. The Mackey court also stated:

> The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

Id. The Mackey requirements have been adopted into Rule 11 of the Tennessee Rules of Criminal Procedure.

However, some of the mandated Mackey advice is not required by Boykin, but represents a supervisory pronouncement of the Court. State v. Prince, 781 S.W.2d 846, 852-53 (Tenn. 1989).

"[A]ny other requirement of <u>Mackey</u> in excess of <u>Boykin</u> is not based upon any constitutional provision, federal or state. It follows, that any omissions, not required in <u>Boykin</u> may be relied upon on direct appeal in appropriate cases but such omissions have no validity on the first or any subsequent post-conviction proceeding." <u>Id.</u> at 853. Courts of this state have consistently held that <u>Mackey</u> advice which is not required by <u>Boykin</u> is not constitutionally based and, therefore, is not cognizable in a petition for post-conviction relief. <u>See</u>, <u>e.g.</u>, <u>Johnson v. State</u>, 834 S.W.2d 922, 925 (Tenn.1992); <u>State v. Neal</u>, 810 S.W.2d 131 (Tenn.1991), <u>overruled</u> <u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Blankenship</u>, 858 S.W.2d at 902; <u>Prince</u>, 781 S.W.2d at 853; <u>Hicks v. State</u>, 983 S.W.2d 240, 247 n.10 (Tenn. Crim. App. 1998); <u>Sneed v. State</u>, 942 S.W.2d 567, 568-69 (Tenn. Crim. App. 1996); <u>Bryan v. State</u>, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992); <u>Teague v. State</u>, 789 S.W.2d 916, 917 (Tenn. Crim. App.1990).

The colloquy between the petitioner and the trial court at the plea hearing indicates that the trial court asked the petitioner if the plea was freely and voluntarily made; if he had been informed of the elements of the crime, burden of proof, and defenses; and if he understood: (1) the nature of the charges against him; (2) that by pleading guilty he was giving up the right to a trial by jury; (3) that by pleading guilty he was giving up the right to confront witnesses; and (4) that by pleading guilty he was giving up the right to self-incrimination. In other words, the trial court satisfied the requirements of <u>Boykin</u>. After questioning the petitioner about the rights he was relinquishing by pleading guilty, the following exchange took place:

> THE COURT: Are you pleading guilty, Mr. McMillen, because in truth you are guilty and for no other reason?
> THE DEFENDANT: (Pausing)
> THE COURT: Now you're hesitating. If you want a trial, Mr. McMillen, I'll give you a trial.
> THE DEFENDANT: Well, it's under my assumption, sir, if I may say something openly here, that I don't feel that I will get a fair, unbiased trial in this county.
> THE COURT: Well, I don't know why your feelings are that way, but your lawyer can certainly address them to me. What I'm telling you is, I have to have a response in the positive to that, or else, I'll set this case for trial and try it. I'm not trying to pressure you. I'll do everything in my power to see that you get a fair trial.
> THE DEFENDANT: I'm guilty, I guess.
> THE COURT: Well, the question simply is this, are you pleading guilty because in truth, you are guilty and for no other reason? Anything less than "yes," and we're going to trial. I'm not trying to force you into anything, Mr. McMillen. You have an absolute right to a trial by jury.
> THE DEFENDANT: Yes, sir.
> THE COURT: I find this defendant knowingly and voluntarily enters into the plea negotiation.

After the trial court accepted the plea, the petitioner stated that he took "responsibility to [sic] some of the actions, some of the crime," but went on to give a lengthy explanation as to why he thought he was not guilty and why he thought other people might be guilty.

In the case herein, the petitioner's complaints about his guilty plea are based upon the non-constitutional elements of <u>Mackey</u> in excess of the requirements of <u>Boykin</u>. The post-conviction judge, also the presiding judge at the plea hearing, admitted that the full <u>Mackey</u> requirements were not met but found nonetheless that the petitioner had entered a knowing and voluntary guilty plea. Further, the post-conviction court found that the petitioner had failed to show prejudice as a result of the omissions.

While it does appear that the trial court failed to comply with the <u>Mackey</u> and Rule 11(c) requirements, the critical inquiry is whether the Petitioner had knowledge of certain rights and waived those rights knowingly and voluntarily. As set out above, the mandates of <u>Mackey</u> are not constitutionally based. The trial court complied with <u>Boykin</u> by advising the petitioner that he had a right to a jury trial, that he had a right to confront the witnesses against him and that he had a right not to incriminate himself. The trial court went to great lengths to insure that the petitioner was entering the guilty plea because he was, in fact, guilty by questioning him thoroughly when the petitioner hesitated after being asked if he was pleading guilty because he was, in fact, guilty. Relief may be given in a post-conviction hearing only if a conviction is void or voidable because of a violation of a constitutional right. <u>See</u> Tenn. Code Ann. § 40-30-103. The petitioner herein has failed to prove that a constitutional right has been violated as the mandates of <u>Mackey</u> have no constitutional basis. Thus, the petitioner's allegations are not cognizable under the Post Conviction Procedure Act and are without merit.

## Conclusion

For the foregoing reasons, we conclude that none of the petitioner's claims merit relief. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE